| UNITED STATES DISTRICT COURT | USDC SDNY |
| SOUTHERN DISTRICT OF NEW YORK | DOCUMENT |
| | ELECTRONICALLY FILED |
| | DOC #: _____ |
| | DATE FILED: November 20, 2018 |

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, WELFARE FUND,
ANNUITY FUND, AND
APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND
INDUSTRY FUND, *et al.*,

                Petitioners,

                -v.-

PORT PARTIES, LTD.,

                Respondent.

16 Civ. 4719 (KPF)

<u>OPINION AND ORDER</u>

KATHERINE POLK FAILLA, District Judge:

    Pending before the Court is a motion by non-party Showtime on the Piers LLC ("Showtime") to quash a subpoena served on it by Petitioners, the Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund, the New York City and Vicinity Carpenters Labor-Management Corporation, and the New York City District Council of Carpenters (collectively, the "Funds"). The Funds commenced this action on June 21, 2016, petitioning the Court pursuant to Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), *as amended*, 29 U.S.C. § 185, to confirm and enforce an arbitration award (the "Award") issued against Respondent Port Parties, Ltd. ("Port Parties"). (Dkt. #1). The Court granted the Funds' summary judgment motion to confirm the Award, and denied Port

Parties's summary judgment motion to vacate the same. (Dkt. #44). Judgment was entered in favor of the Funds, and this case was closed in February 2018. (Dkt. #49).

In March 2018, the Funds issued subpoenas to financial institutions TD Bank, N.A., Bank of America, N.A., Citibank, N.A., and JP Morgan Chase Bank, N.A. (collectively, the "Bank Subpoenas") seeking financial information regarding Port Parties and Showtime. Showtime has moved to quash the subpoenas served on it as overly broad and unduly burdensome. For the reasons set forth below, Showtime's motion is denied.

## BACKGROUND[1]

### A. Factual Background

The Court has previously engaged in an exhaustive recitation of the underlying facts in this matter. *See Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund* v. *Port Parties, Ltd.*, No. 16 Civ. 4719 (KPF), 2017 WL 3267743, at *2-8 (S.D.N.Y. July 31, 2017) ("*Port Parties I*"). In a subsequent order, the Court provided further elucidation of this matter's complicated factual background. *See Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund* v. *Port Parties, Ltd.*, No. 16 Civ. 4719 (KPF), 2018 WL 722860, at *1-3 (S.D.N.Y. Feb. 5, 2018) ("*Port Parties II*"). The following sections therefore

---

[1] The Court will refer to the parties' submission in the following manner: Showtime's opening brief as "Showtime Br." (Dkt. #59), Petitioner's brief in opposition as "Funds Opp." (Dkt. #60), and Showtime's reply brief as "Showtime Reply" (Dkt. #62). Throughout this Opinion, the Court will spell the possessive form of the singular noun "Port Parties" as "Port Parties's." The parties use a different construction in their briefs: "Port Parties'." (*See, e.g.*, Showtime Br. 3; Funds Opp. 2). For ease of reading, the Court will not indicate where it has altered statements taken from the parties' submissions in order to match its grammatical preference.

discuss the underlying facts only to the extent necessary to provide relevant context and to resolve the instant motion.

### 1. The Collective Bargaining Agreements with Port Parties and Showtime

In 2010, the New York City District Council of Carpenters (the "Union") and Port Parties executed a collective bargaining agreement (the "CBA"), requiring Port Parties to make periodic contributions to the Funds. *See Port Parties II*, 2018 WL 722860, at *1. The Funds state that the Union signed a separate collective bargaining agreement with Showtime. (Funds Opp. 2). The Union's CBA with Port Parties contained both (i) a provision allowing the funds to audit Port Parties's books and payroll records and (ii) a broad arbitration clause under which Port Parties and the Union declared their intent "that all disputes between them, both within and outside of the [CBA], be submitted to arbitration[.]" *Port Parties II*, 2018 WL 722860, at *1 (citations omitted). The collective bargaining agreement with Showtime also provided for inspection and arbitration. (Funds Opp. 2-3).

Pursuant to the CBA, the Funds conducted an audit of Port Parties's books and reviewed Port Parties's contributions to the Funds. *See Port Parties I*, 2017 WL 3267743, at *3. That audit revealed that Port Parties had failed to make the required contributions to the Funds. *See id.* The Funds determined that adding together the required contributions, the interest on these payments, and certain liquidated damages required by provisions in the CBA, Port Parties owed them $647,387.03. *See id.* The Court understands

3

that the Funds conducted a separate audit of Showtime, which audit revealed similar deficiencies. (Funds Opp. 3).

### 2. The Arbitration Proceedings Against Port Parties and Showtime and the Sherwood Letter

The Funds commenced an arbitration proceeding against Port Parties by sending a Notice of Intention to Arbitrate to the designated arbitrator and Port Parties on January 28, 2016. *See Port Parties I*, 2017 WL 3267743, at *4. On January 31, 2016, the Arbitrator issued a Notice of Hearing scheduling the arbitration for March 23, 2016. *See id.* Separately, the Funds brought an arbitration proceeding against Showtime, which proceeding was scheduled for the same day as the Port Parties arbitration. (Funds Opp. 3).

The day before the hearing, James C. Sherwood, a representative of Showtime, sent an email to the Funds' counsel (the "Sherwood Letter") requesting an adjournment of the arbitration hearing. (Funds Opp. 3). The email was titled "arbitration vs. Showtime" and contained an attached letter with the subject line "Showtime on the Piers, LLC." (*Id.*). Mr. Sherwood requested an adjournment on the grounds that federal officers had seized Showtime's records, and made no mention in his email of Port Parties. (*Id.*). The Funds' counsel did not see the Sherwood Letter until the next morning, i.e., the morning on which the arbitrations had been scheduled. (*Id.*).

On the morning of March 23, 2016, the Funds' counsel attended the arbitration proceeding. *See Port Parties I*, 2017 WL 3267743, at *7. (Funds Opp. 3). No representative for Port Parties or Showtime appeared. The Funds'

4

counsel informed the arbitrator of the Sherwood Letter and called Mr. Sherwood about the matter. (*Id.*). Mr. Sherwood relayed to the arbitrator and to the Funds' counsel that he did not represent either Showtime or Port Parties in the arbitrations. (*Id.*).

On March 24, 2016, the arbitrator entered awards in the Funds' favor against Port Parties and Showtime. (Funds Opp. 3). With regard to Port Parties, the arbitrator wrote that Petitioners had "submitted proof that [Port Parties] had legally sufficient notice of th[e] proceeding and the claims against [it]." *Port Parties I*, 2017 WL 3267743, at *7 (internal quotation marks and citation omitted). He determined that Port Parties defaulted by failing to appear at the Arbitration Hearing or request an adjournment. *See Port Parties II*, 2018 WL 722860, at *2. The arbitrator further credited the evidence of deficiencies the Funds had offered, including the testimony offered by the Funds' auditor, and ordered Port Parties to pay the Funds $673,994.50. *See id.*

### 3. The Instant Litigation and the Showtime Litigation

The Funds filed a petition with this Court to confirm the Award against Port Parties on June 21, 2016. (Dkt. #1). Simultaneously, the Funds filed a petition to confirm the separate award against Showtime. (Funds Opp. 3). When the petitions were filed, both parties in the instant case agreed that they were bound by the CBA; the parties to the Showtime case disagreed as to whether Showtime was bound to its collective bargaining agreement with the Union. (Funds Opp. 3-4). In the instant case, Port Parties's arguments against

confirmation of the Award rested on different theories than the vitality of the CBA:

> [Port Parties] advanced three primary arguments: (i) it did not receive timely notice of the hearing and was deprived of the opportunity to participate in the arbitration; (ii) the Award was fraudulently obtained because Petitioners did not advise [the arbitrator] that Petitioners had previously consented to adjourn the arbitration hearing; and (iii) [the arbitrator] exceeded his jurisdiction in issuing the Award because the work that Port Parties had performed was outside the scope of the CBA's arbitration provision.

*Port Parties II*, 2018 WL 722860, at *2. Pursuant to a June 23, 2016 Order of this Court (Dkt. #7), the Funds filed a motion for summary judgment and supporting papers to confirm the Award on October 7, 2016 (Dkt. #21-26). Port Parties cross-moved to vacate the Award on October 28, 2016. (Dkt. #27-34).

As this Court summarized in its most recent opinion on the issue:

> In an Opinion and Order dated July 31, 2017, the Court rejected Port Parties's arguments and granted Petitioners' motion for summary judgment. *Port Parties*, 2017 WL 3267743, at *8-17. The Court held that "Petitioners never agreed to adjourn the Arbitration Hearing," "Port Parties never requested an adjournment of it," and "Port Parties's other attacks on the Default Award are unavailing [and] fall[ ] short of the high bar the LMRA imposes on a party seeking to vacate a labor arbitration award." *Id.* at *1.

*Port Parties II*, 2018 WL 722860, at *3. In so doing, this Court rejected Port Parties's arguments that the Sherwood Letter constituted a request for adjournment as to it as well, noting that the letter repeatedly referenced

6

Showtime without once referencing Port Parties. *See Port Parties I,* 2017 WL 3267743, at *12.

The Showtime litigation proceeded separately in the Southern District of New York before United States District Judge Ronnie Abrams. (Funds Opp. 5). On September 22, 2017, Judge Abrams found that the question of whether Showtime was bound by its collective bargaining agreement with the Union raised genuine issues of material fact and ordered discovery in anticipation of trial on the question. (*Id.*).

By contrast, on February 5, 2018, this Court granted the Funds' motion for attorneys' fees and entered a judgment against Port Parties in the amount of $765,258.76. *See generally Port Parties II*, 2018 WL 722860. The Funds then served the Bank Subpoenas seeking financial records relating to Showtime and Port Parties, and Showtime's motion to quash followed

## DISCUSSION

### A. Applicable Law

Federal Rule of Civil Procedure 69(a)(2) provides that, "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person." Fed. R. Civ. P. 69(a). "It is not uncommon [for a judgment creditor] to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets." *EM Ltd.* v. *Republic of Argentina,* 695 F.3d 201, 207 (2d Cir. 2012). Discovery relating to third parties' assets is "permissible when the [third party and the defendant] are closely related and reasonable doubts have been raised concerning the

7

good faith of the transfer of assets between [them]." *U.S. S.E.C.* v. *Verdiramo*, No. 10 Civ. 1888 (RMB), 2013 WL 5882918, at *2 (S.D.N.Y. Oct. 29, 2013) (internal quotation marks and citations omitted). Third-party discovery is not unlimited, however; "the general rule is that non-party discovery is limited to a search for the defendant's hidden assets." *Costamar Shipping Co.* v. *Kim-Sail, Ltd.,* No. 95 Civ. 3349 (KTD) (JCF), 1995 WL 736907, at *3 (S.D.N.Y. Dec. 12, 1995). However, where "an alter ego relationship exists between . . . the judgment debtor, and [the third party,] [the creditor can] pierce the corporate veil and obtain discovery of [the third party's] assets." *Id.*

**B.     Analysis**

As set forth in the remainder of this section, the Funds have presented sufficient evidence to suggest that Port Parties and Showtime are alter egos, and Showtime's counterarguments do not rebut this clear evidence. Accordingly, the Bank Subpoenas are permissible and the motion to quash is denied.

To begin, the Funds make a strong showing that Port Parties and Showtime are alter egos, thereby raising reasonable doubts concerning the transfer of assets between them. In this regard, the Funds point to a series of facts that Showtime does not dispute. The companies shared ownership; Charles Newman was the President of both. (Funds Opp. 8). They shared employees, an address, and telephone number, and Showtime referred to itself as "Port Parties's successor." (*Id.*). More broadly, Showtime does not dispute that it and Port Parties had "common ownership, management and

8

supervision, [a] common business purpose, [and a] common address and phone number." (Showtime Reply 7).

This description maps nicely with the factors that this Court must examine in determining whether two companies are alter egos, including: "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Ret. Plan of the Unite Here Nat'l Ret. Fund* v. *Kombassan Holdings A.S.*, 629 F.3d 282, 288 (2d Cir. 2010) (quotations omitted). And Showtime nowhere disputes the claim that Port Parties is effectively judgment-proof, while Showtime continues to transact business in the same field and with the same employees. (*See* Funds Opp. 8-9). This lends further support to the Funds' claim of an alter ego relationship, for while "there is no set rule . . . as to [determining when to] pierce the corporate veil, the 'general principle followed by the courts has been that [alter ego] liability is imposed when doing so would achieve an equitable result.'" *William Wrigley Jr. Co.* v. *Waters*, 890 F.2d 594, 600-01 (2d Cir.1989) (collecting cases).

The Funds also correctly point out that the evidence here is more substantial than that which led a sister court in this District to determine that third-party discovery was permissible. (Funds Opp. 9). *See Verdiramo*, 2013 WL 5882918, at *2 (listing, as three reasons for allowing discovery, evidence of common ownership, use of the subpoenaed entities' assets to pay the judgment debtor's debts, and the fact that the judgment debtor's family controlled the third parties). Given this uncontroverted evidence, the Court agrees that the

9

Funds have raised sufficient questions as to the existence of an alter ego relationship between Port Parties and Showtime to warrant discovery.

Showtime raises four counterarguments to quash the subpoena: (i) the subpoenas are overbroad (Showtime Br. 4-6); the Funds are estopped from claiming Port Parties and Showtime are closely related or alter egos (*id.* at 6-9); the Bank Subpoenas are an improper method to obtain discovery in the distinct Showtime litigation before Judge Abrams (*id.* at 9-11); and Showtime's privacy interests outweigh the Funds' need for the information (*id.* at 12). The Court will address each of these arguments in turn and explain why none of them successfully rebuts the Funds' entitlement to financial information about Showtime.

### 1. The Bank Subpoenas Are Not Overbroad

Showtime's first argument restates the standard for third-party discovery and argues that there has not been a showing of fraudulent transfers between Showtime and Port Parties. (Showtime Br. 4-6). However, in the face of the Funds' arguments that the parties are alter egos or substantially related parties, Showtime largely abandons this argument in favor of its second argument regarding estoppel.

Throughout its briefing, Showtime references the separate arbitration proceedings, the parties' litigating postures concerning the Sherwood Letter in the summary judgment proceedings before this Court, and the Court's rulings on these issues. (Showtime Br. 6-9; Showtime Reply 7-8). That said, Showtime raises no claims that the Funds have misstated the record relating to

10

the ties between the two companies. This is clear from Showtime's attempt to rebut the Funds' citation to other decisions concerning the matter of relation between the parties:

> While the Court in *Verdiramo* ultimately granted in part and denied in part a motion to quash post-judgment subpoenas served upon non-parties, such case is factually distinguishable from the instant case, as a review of the *Verdiramo* case reveals it did not involve a party that commenced separate actions against alleged alter egos and maintained throughout that the alleged alter egos were separate entities.

(*Id.* at 6). Given that Showtime's position here is largely encompassed by its second point, the Court rejects the argument that the Bank Subpoenas are overbroad and turns to the issue of estoppel.

### 2. The Funds Are Not Estopped from Arguing That Showtime and Port Parties Are Alter Egos

Showtime's arguments regarding estoppel overstate both the Funds' prior arguments and the holdings of this Court. In brief, Showtime advances two reasons why the Funds' prior litigating position prevents the Funds from now arguing that the two parties are alter egos. *First*, the Funds filed separate arbitration proceedings against Port Parties and Showtime, and *second*, the Funds argued to this Court that the Sherwood Letter was not a request to extend by Port Parties. (Showtime Br. 8).

The first point can be dispensed with quickly. As Showtime acknowledges, the requirements for estoppel include "[i] the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and [ii] that position was adopted by the first tribunal in some

11

manner, such as by rendering a favorable judgment." *Robinson* v. *Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015). There is no suggestion in Showtime's briefing or in the relevant case law that filing two separate arbitrations constitutes the taking of an inconsistent position on the matter of whether parties are alter egos. Indeed, the filing of separate arbitration proceedings is not an action on which the Court would or could render judgment. Thus, the fact of separate arbitration proceedings does not prevent the Funds from arguing that Port Parties and Showtime are alter egos.

Showtime focuses greater energy on its argument that the Funds are estopped because their prior position on the Sherwood Letter was that the two companies were not alter egos, and the Court adopted this position in confirming the Award. (Showtime Br. 7-9; Showtime Reply 7-8). Again, Showtime seeks to prove too much. The material on which Showtime relies to represent the Funds' position is an excerpt from the Funds' Memorandum of Law of November 23, 2016, in which they stated, "Mr. Sherwood's March 22, 2016 correspondence requested an adjournment on behalf of Showtime and not Port Parties." (Dkt. #35 at 10). While this excerpt may point to an understanding that the companies operated separately, it is far from a clear position that the companies were not alter egos. Indeed, other language in the same brief suggests that the Funds considered the companies alter egos, a position to which Port Parties objected. (See *id.* at 11 (referencing "a longstanding dispute between the parties over whether payments Showtime made towards contributions owed for work it performed on Port Parties's

12

projects [could] be allocated towards Port Parties's delinquencies . . . [, and the] Funds . . . allocating Showtime's payments towards Port Parties's unpaid contributions")).

Furthermore, the alter ego determination does not require completely separate existences. "Argument[s] that alter ego status cannot apply where the entities exist simultaneously [are] incorrect. Although the alter ego doctrine is primarily applied in situations involving successor companies, where the successor is merely a disguised continuance of the old employer, it also applies to situations where the companies are parallel companies." *Kombassan Holdings A.S.*, 629 F.3d at 288 (internal quotation marks and citations omitted). Judicial estoppel requires a party to assert a position that is clearly inconsistent with an earlier one. *See DeRosa* v. *Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010). The Court does not find that the assertion that the Sherwood Letter did not request an extension for Port Parties is at all inconsistent, let alone clearly inconsistent, with the position that the two companies are alter egos.

Showtime also suggests that the Funds are precluded from arguing the two companies are alter egos based on the Court's opinion in *Port Parties I*: "[T]his Court having already rejecting Port Parties's argument that the adjournment letter that only references Showtime was insufficient to constitute an adjournment request for Port Parties has already rejected any finding that Showtime and Port Parties are related entities." (Showtime Br. 8 (citing *Port Parties I*, 2017 WL 3267743, at *12-13)). Showtime fails to appreciate the

13

limited scope of the Court's holding, which merely rejected an argument that a letter that made no reference to Port Parties could adjourn a hearing as to Port Parties. Such a holding plainly does not suggest that the parties are unrelated, and as discussed above, a finding of alter ego liability does not require the Court to treat the companies' names as synonymous. Rather, it requires finding that the companies have "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *See Kombassan Holdings A.S.*, 629 F.3d at 288. Here, they do.

> 3. **The Pending Showtime Action Does Not Require the Court to Quash the Bank Subpoenas**

Showtime's third argument is that the discovery sought would be an improper effort to gain "backdoor" discovery in the litigation before Judge Abrams. (Showtime Br. 9-11). This argument, however, is largely a retread of Showtime's estoppel point. (*See, e.g.*, *id.* at 9 ("Such backdoor discovery is particularly disconcerting given Petitioners' sudden and unexpected change in position in the Showtime Litigation that Port Parties and Showtime are related entities.")). The arguments beyond this restated point make little attempt to explain why this discovery request would be improper, and, as the Funds point out, Judge Abrams has issued no stay of discovery. (Funds Opp. 15). Showtime recites that "when the purpose of discovery is to gather information for use in proceedings other than the pending suit, discovery properly is denied." (Showtime Br. 9 (quoting *Blue Angel Films, Ltd.* v. *First Look Studios, Inc.*, No. 08 Civ. 6469 (DAB) (JCF), 2011 WL 830624, at *1 (S.D.N.Y. Mar. 9,

14

2011) (internal quotation marks and citation omitted)). However, Showtime raises no facts to suggest that the purpose of discovery here is anything other than the satisfaction of the judgment in this case against Port Parties.

### 4. Showtime's Privacy Concerns Can Be Addressed by Protective Orders

Showtime's final argument recites privacy concerns, but largely echoes its earlier arguments that the Funds have no entitlement to see these documents: "Given the absence of an alter ego relationship between Showtime and Port Parties as well as Petitioners' failure to so much as allege that there has been a transfer of assets between Showtime and Port Parties, these highly confidential documents have no relevance to the satisfaction of Petitioners' judgment against Port Parties." (Showtime Br. 11-12). Given the overlap with the issues discussed in prior sections, the Court can quickly resolve this issue and hold that privacy concerns do not require the Court to quash the Bank Subpoenas. The parties are directed to address any outstanding privacy concerns through protective orders.

## CONCLUSION

For the reasons set out above, Showtime's motion to quash the Bank Subpoenas is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 54.

SO ORDERED.

Dated: November 20, 2018
New York, New York

*Katherine Polk Failla*
_____
KATHERINE POLK FAILLA
United States District Judge